## HARE *vs.* VAN DEUSEN and wife and MILLER.

The equitable lien of a vendor, for the unpaid purchase money, is raised by
the law, in the absence of an express agreement, because it is deemed equi-
table that the vendee shall not take a perfect, unincumbered title to the
property until he pays for it.   And the lien is lost, where the parties have
waived it; or where it is obvious that they contemplated a different security
for the purchase money.

Where the plaintiff, for land sold by him to the defendants, received from them,
in part payment, a tract of land subject to a mortgage of $4000, which the
plaintiff assumed to pay, and the defendants covenanted that such tract of
land was free from all other incumbrances, but the same was in fact subject
to the equitable lien of a note for $900, given to D. the vendor of the defend-
ants, for the purchase money; *Held* that the plaintiff, by taking the *covenant*
of the vendees that the lands conveyed by the latter were free from incum-
brances, had evinced his intention to rely upon that remedy, for indemnifi-
cation, and had thereby waived his equitable lien, if any he had, for the
unpaid purchase money.   And that, at all events, payment or satisfaction,
by the plaintiff, of the incumbrance created by the note, or eviction there-
under, was a condition precedent to the enforcement of such an equitable lien.

There must be a substantive cause of action, existing in the plaintiff at the
commencement of the suit, and the action cannot rest upon facts subse-
quently arising.

DEMURRER to complaint.   The complaint alleged that
about the 1st of May, 1858, the plaintiff sold and con-
veyed to the defendant Catharine Van Deusen a farm of land,
in Livingston, Columbia county, subject to two mortgages
thereon, for the price or consideration of $1471.43.    That in
exchange and payment therefor, the defendants, Van Deusen
and wife, sold and conveyed to the plaintiff a farm of land in

Taghkanic, subject to a $4000 mortgage thereon, which the plaintiff assumed to pay, for the price or sum of $2000. That the plaintiff paid to the defendant Van Deusen $528.57, being the difference in price between said two parcels of land. That in the conveyance to the plaintiff, Van Deusen covenanted that the lands were free from all incumbrances except the $4000 mortgage. That subsequently Henry E. Decker and others, the grantors of Van Deusen of the Taghkanic lands, commenced an action in the supreme court against said Van Deusen and the plaintiffs and others, to enforce an alleged equitable lien for $900 of unpaid purchase money thereof, for which the Deckers held the note of said Van Deusen. That on the 19th of May, 1859, a judgment was rendered in said suit in favor of the plaintiffs therein for $1012.60, the amount of said alleged equitable lien, with interest thereon, and also directing a sale of said premises in Taghkanic for the satisfaction thereof. That at the time of his purchase from the defendants, Van Deusen and wife, the plaintiff was entirely ignorant of the legal effect of the facts charged in the complaint of the Deckers, or that a note for unpaid purchase money had the effect of a mortgage upon the land, and that he contracted with Van Deusen in ignorance thereof. That the interest of said Van Deusen and wife in said Taghkanic lands, because of said equitable lien, was less by the amount thereof, than represented and covenanted in their deed to the plaintiff, and judgment was rendered in said action of the Deckers for $1294.48, principal, interest and costs; to which amount the plaintiff claims and insists that the consideration money of the Livingston lands purchased by the defendants from the plaintiff remains unpaid, and that the plaintiff has an equitable lien therefor on said lands. That Van Deusen was, at the time of said purchase and sale, and has ever since been, entirely insolvent, and the plaintiff will be remediless unless he can succeed in this action. That the defendant Miller is the holder of a subsequent mortgage upon said Livingston lands, dated May 7, 1858, and had notice at the time of taking the same of the

facts constituting the plaintiff's equitable lien, and that said mortgage was taken for a precedent indebtedness. The plaintiff prayed for a judgment establishing his equitable lien, and for a sale of the Livingston lands in satisfaction thereof with costs, and for general relief.

The defendants Catharine Van Deusen and Abraham F. Miller demurred separately to the complaint, alleging several specific grounds of demurrer, and among others that the complaint did not state facts sufficient to constitute a cause of action.

*R. E. Andrews* and *John Whitbeck*, for the defendants.

*John Gaul, jun.* and *Cornelius Esseltyne*, for the plaintiff.

HOGEBOOM, J. A vendor of lands has an equitable lien for the unpaid purchase money. This lien grows out of the transaction itself, and is implied by law in order properly to adjust the equities between the parties. It is not precisely founded upon contract—at least not upon express contract; for it exists although the parties may not have contracted for it, and may even have been unaware of its existence. It is aided by the law, in the absence of an express agreement, because it is deemed equitable that the vendee should not take a perfect and absolute—an unincumbered—title to the property, until he pays for it. Resting upon this natural equity, it is lost, where the parties have waived it, or where it is obvious that the parties contemplated a different security for the purchase money. Therefore where other security is taken, in the form of an express incumbrance upon other lands, or even upon the land sold, or by the note or obligation of a third person, it is deemed reasonable to infer that the parties intended to waive the equitable lien, and to rely upon the substituted security. It is a matter of considerable difficulty, sometimes, to determine when this equitable lien should be deemed to have been surrendered; for the facts often leave us in doubt what were the

real intentions of the parties. But several rules on this subject have become, in the progress of judicial decision, well established. 1. In the event of there being simply unpaid purchase money of land, and in the absence of any agreement to the contrary, the lien exists. (*Garson* v. *Green,* 1 *John. Ch.* 308. *Fish v. Howland,* 1 *Paige,* 20.) 2. This lien may be waived by the express agreement of the parties, and also by certain acts from which a waiver is necessarily inferrible or reasonably implied. 3. The lien is not waived simply by taking a note, bond, or other mere personal covenant or agreement for the purchase money. (*Fish* v. *Howland,* 1 *Paige,* 20. 4 *Kent's Com.* 153.) This was for a considerable time a debatable question, and conflicting decisions upon it will be found in the books; but such seems to be the settled law of this state. 4. The lien is waived when any landed security upon the same or other lands, or any personal security in addition to that of the vendee is taken for the unpaid purchase money. (4 *Kent's Com.* 153. *Gilman* v. *Brown,* 1 *Mason,* 191. *Fish* v. *Howland, supra. Hallock* v. *Smith,* 3 *Barb. S. C. R.* 271.) This is upon the principle that the parties have looked to and contracted for another kind of security, which is inconsistent with the idea of an implied lien—implied mainly because the parties have contracted for no other, and because it is therefore deemed equitable that it should exist. 5. The lien is also waived where the parties have agreed to substitute something else for the unpaid purchase money, as the covenant or obligation of the vendee to do some collateral act. (*McKillip* v. *McKillip,* 8 *Barb.* 552. *Patterson* v. *Edwards,* 7 *Cushman's Mississippi R.* 67. *Jarrott* v. *Sweetland,* 3 *Myl. & Keen,* 665.) In such a case the purchase money is deemed to be paid or satisfied by such collateral covenant or obligation, and it takes the place of the unpaid purchase money as a part of the consideration or price of the land. The parties have reasonably manifested their intention to rely on something else than the implied lien; they have contracted with their eyes open, for a different form of secu-

rity, or rather for a different mode of satisfying the purchase price of the land. 6. I think also another case of waiver arises where at the time of the purchase or conveyance the transaction is so far complete that no present debt or obligation is owing by the vendee to the vendor. If the lien ever exists, it must exist at the moment when the conveyance is made. The time of payment may be postponed, but the obligation must exist and attach to the land when the title passes and the transaction has been consummated between the parties. If at that moment it be clear that no equitable lien exists, it cannot subsequently arise.

Keeping in mind these general principles, let us consider their practical application; for here again not unfrequently new difficulties are encountered. Where on the one side the consideration is the sale of lands and on the other the payment therefor in money, no question can arise. If the whole consideration money is paid, the equitable lien is extinguished, and no new or subsequent transaction can revive it. If a portion remain unpaid, then so long as it remains unpaid, the equitable lien continues. If, as was suggested on the argument, a portion of the money thus paid is spurious or counterfeit, I have no doubt the equitable lien exists, and for the reason that to such extent there is in fact no payment. The purchase money never was completely paid. The equitable lien, therefore, is not revived by a subsequent transaction, but it was never lost or extinguished. But suppose a portion of the money to have been uncurrent or depreciated, and that fact known to the parties, but nevertheless accepted at its nominal par value, is it not clear that no equitable lien would exist to the amount of such depreciation; in other words, that there would be no unpaid purchase money? Even where the fact of depreciation was not known, but both parties acted with equal means of knowledge and without fraud, I think the actual depreciated character of the money paid would not raise an equitable lien to the extent of such depreciation. I have considerable doubt whether the fraud would do so, if fraud in

fact existed. The fraud would furnish the basis of an action for damages, or for rescinding the contract, but I think it would not originate or resuscitate an equitable lien, where the transaction was in fact consummated at the time of taking the deed. The equitable lien does not spring from such a source. Take another case. Suppose the vendee, in payment of the purchase money, should deliver to the vendor the check or note of a third person, representing it to be good, and the vendor in good faith accepted the same, and it was in fact worthless, and so known by the purchaser to be at the time. Would the equitable lien exist to the amount of the note ? I think not; for the reason that the purchase money was paid — treated as paid by the acts of the parties — that the vendor had accepted different security, and was at the time satisfied with it. No doubt the vendee would be liable for the fraud; probably the contract might be rescinded for that cause; but I am not able to see that the vendor could *affirm* the transaction, treat the contract as *executed,* and still rely upon the equitable lien for purchase money unpaid, which had in fact been paid to him at the time, in a manner entirely satisfactory.

Where the transaction consists of a sale of land on the one side and the payment therefor by other land in whole or in part, it is easy to see that difficulties may, under certain circumstances, arise. If the lands on each side are taken at certain valuations agreed upon by the parties without fraud, it would seem to be precisely the same as if an amount of money was paid equal to such valuation. If fraud was practised, so that the land received in exchange was over-valued, I do not think an equitable lien as for unpaid purchase money would arise to the extent of this over-valuation. The vendor chose to take this land as part payment; he chose to take it at a specified price; the purchase money was in fact adjusted; the transaction was consummated, and I think the lien was at an end. If, as is conceded, a mortgage upon other lands would extinguish the equitable lien, would not a payment in other lands extinguish the equitable lien ? No doubt the aggrieved

party has a remedy; but it is not the enforcement of an equitable lien. He may sue for the fraud; he may perhaps rescind the contract; but he cannot, I think, affirm the transaction in part and disaffirm it in part and file a bill to satisfy an equitable mortgage, which, if the transaction is to stand, has been in fact paid.

Again; suppose the transaction to be a sale of lands, on the one side, at an agreed valuation, paid for on the other by a conveyance of other lands at an agreed valuation, and represented and covenanted to be free from incumbrance. Suppose the valuations of the land to have been fair, and intelligently agreed to, on either side, but the lands received in payment to have been in fact subject to a valid prior incumbrance for half or any other part of their value. Would the existence of this incumbrance raise an equitable lien? I think not; for the following reasons: 1. The parties have agreed upon a different remedy, to wit, one founded upon the covenant against incumbrances. The insertion of such a covenant in the deed was for the precise purpose of affording a remedy for its breach; and this positive and affirmative remedy must be deemed the one which the parties had in view, and not a reliance upon an equitable lien, the foundation for which, to wit, the existence of unpaid purchase money, was not within the contemplation of the parties, at the time. The parties have therefore practically ignored a resort to such a lien. 2. There is in fact no unpaid purchase money; the purchase money has been all paid—all arranged to the satisfaction of the parties; the conveyances have been respectively made and accepted, and the full amount of the purchase money thus made up. If the breach of the covenant against incumbrances is to be regarded to the extent of the incumbrance as unpaid purchase money, then a breach of the covenant of seisin, of right to convey, of further assurance, of general warranty, must also be regarded, to the extent of the damages recoverable in actions upon them respectively, as equivalent to equitable liens for unpaid purchase money, and entitling the party to foreclose the same.

Hare *v.* Van Deusen.

Express covenants in a deed will no longer be regarded as excluding implied covenants therein. 3. At all events payment or satisfaction by the vendee, of the incumbrance, or eviction thereunder, must be regarded, I think, as a condition precedent to the enforcement of such an equitable lien. Until payment or eviction, it cannot be known but that the incumbrance will be satisfied by the party from whom it is owing. Until such event the equity of the vendee does not arise.

The plaintiff in this action, according to the case made in his complaint, is in the predicament last supposed. For land sold by him he has received from the defendants, in part payment, a tract of land covenanted by them to be free from incumbrances, but actually subject thereto. Fraud is not pretended—not even ignorance of the facts constituting the incumbrance, but only ignorance of the law. The incumbrance has not been paid or satisfied by the plaintiff; nor has he been evicted from the land. It is true a decree for foreclosure has been obtained, but that is nothing more than a judicial establishment of the incumbrance. It may, and probably will, lead to a sale of the property and the eviction of the plaintiff; but that event has not yet occurred; at least not before the commencement of the suit. It it said outside of the complaint, that a sale has in fact taken place since the commencement of this action, and that this fact may be supplied by amendment or supplement. But a substantive cause of action must exist at the time of the commencement of the suit, and cannot rest upon facts subsequently arising. I think the action, if ever maintainable, is prematurely brought. However that may be, it is sufficient to say that we must adjudge the case by the facts now before us, and the plaintiff must judge for himself, of the expediency of availing himself of the privilege of amendment.

I think that in this case the vendor, by taking the *covenant* of the vendee that the lands in Taghkanic are free from incumbrance, has evinced his intention to rely upon that remedy for indemnification. In other words, he has waived his lien,

if any he had.   It may be said that the taking of the covenant against incumbrances is no more than a taking of the note or bond of the vendee ; that it is relying upon the personal security of the purchaser.   But I think it is more.   It is evidence of the intention of the parties to adopt a particular form of remedy in case of a breach of that part of the contract, and to dispense with the equitable lien, which is only preserved where it is clear that the parties have not intended to waive it, or to rely upon a different security.

We have no adjudicated cases, of which I am aware, upon precisely similar facts ; but some are nearly analogous in principle.   In *McKillip* v. *McKillip,* (8 *Barb.* 552,) it was held that where the consideration of the conveyance of land was the covenant of the vendee to support the vendor and another, the vendor retained no equitable lien upon the land.   It was put upon the ground that the *covenant* of the vendee was substituted for the purchase money, or as a mode of payment of the price of the land.

In *Clark* v. *Royle,* (3 *Sim. Rep.* 399 ; 2 *Story's Eq. Jur.* 655, § 1227, *note* 2,) it was held that where the consideration of the conveyance was a covenant to pay an annuity to the vendor for life, and a distinct annuity to other persons, a breach of the covenant as to the latter would not enable them to enforce an equitable lien for the payment of the money due to them, for they are not parties to the conveyance, and stand in no privity to establish a lien, at least unless the original agreement imports an intention to create such a lien.   In *Parrott* v. *Sweetland,* (3 *Myl. & Keene,* 655,) where the vendor, in lieu of £3000, (the purchase money,) agreed to accept £100 annually for the joint lives of the vendor and her intended husband, if the purchaser should so long live, to be secured by the purchaser's bond, which provided for the payment of the £3000 in certain events, and a receipt was indorsed upon the conveyance " of a bond for £3000, being the full consideration within expressed to be given ;" it was held that the vendor had agreed to accept such a bond as a *substi-*

*tution* for the price, and that the lien for the purchase money was consequently discharged. In *Patterson* v. *Edwards*, (7 *Cush. Missis. Rep.* 67,) it was held, in 1855, that where the vendee agreed to pay for the lands $10,000 cash, and to take up and deliver to the vendor two certain notes (of the vendor) due to the Planter's Bank, and secured by his mortgage, the taking of the collateral obligation of the vendee to take up the notes was a waiver of the lien for the purchase money ; that in order to create a vendor's lien, there must be a *debt* for unpaid purchase money, to a *fixed* amount, and due directly to the *vendor;* that if the obligation consists of a *eollateral* covenant, or be for the discharge of a liability to a *third* party, no lien exists, where the conveyance is absolute ; and that the lien is waived, where the obligation of the vendee to discharge such liability appears to be substituted for the purchase money.

The principles adopted in some of these cases, if they are to be regarded as authoritative expositions of the law, are subversive of the plaintiff's right to recover. The plaintiff, with a knowledge of the facts, as we must assume, though not of the law, has chosen to take the covenant of the defendant, 1, to discharge certain incumbrances ; and 2, that the premises are free from all others. Has he not made his election to rely upon the covenant, and accepted it as a substitute for the purchase price of the land ? This covenant is intended by the parties for his indemnity, and he must show he is damnified before he is entitled to recover. It requires some ingenuity to regard this claim in the light of unpaid purchase money, and more to presume that the parties intended thereby to preserve an equitable lien to the plaintiff, therefor.

There must be judgment for the defendants on the demurrer, with leave to the plaintiff to amend on payment of costs.

[COLUMBIA SPECIAL TERM, January 9, 1860. *Hogeboom,* Justice.]