## FISK v. POTTER.

### December, 1865.

Ater a railroad company had executed and recorded a mortgage of all the lands, &c., it owned, or should acquire, in trust to secure bond-holders, an agent of the company sold and conveyed land to the company. *Held*, that he must be deemed to have waived any claim to a vendor's lien for the price, as against the mortgagees and those claiming under them.

Of the two liens, accruing at the same time, the legal lien of the re-corded mortgage must be deemed superior to the secret equity of the vendor.*

*It seems* that a vendor's lien cannot be upheld as equal to the claim of the purchaser's *bona fide* assigns without notice.

The breach of a collateral agreement to pay part of the consideration for lands sold, in another commodity than money, creates no lien upon the land.

Notice of an unrecorded lien, after part payment of the purchase money, is not effectual against a purchaser, after a valid sale, who purchases under *bona fide* mortgagees who had no notice of the lien.†

John Fisk sued the Canandaigua & Niagara Falls Railroad Company, Isaac Seymour, Robert B. Potter, Joseph Fisher, and William Brown, in the supreme court, to enfore an equitable lien for the purchase money of land sold by the plaintiff to the company, defendants.

The railroad company, a corporation organized in 1851 (under the general railroad law), in order to raise money to aid in the acquisition of lands and construction of its road from Canandaigua to Suspension Bridge, on March 17, 1852, executed a mortgage to Isaac Seymour and another, as trustees, to secure an issue of bonds amounting to one million dollars. The mortgage was expressed to convey " the railroad constructed and to be constructed, together with, all and singular, . . . the real estate now owned by the said company, or which shall hereafter be owned by them."

---

* Compare Hulett v. Whipple, 58 *Barb.* 224; and Smith v. Smith, 9 *Abb Pr. N. S.* 420, and cases there collected.

† Compare Frost v. Koon, 30 *N. Y.* 428.

The mortgage also contained a covenant to give further assurance, so as to embrace the railroad as the same might be completed.

The plaintiff was an agent of the company, employed in securing the necessary lands for its right of way; and the route lay across his land. On November 9, 1852, a little less than eight months after the first mortgage had been made and recorded by the company, and before the second mortgage mentioned in the opinion was executed, the plaintiff, who owned an undivided fifth of a parcel of land contiguous to the company's track, joined with his co-tenants in a sale and conveyance of the land to the company, and the company took possession and used it for their road. Plaintiff's co-tenants were paid for their shares. Plaintiff accepted from the company, to secure the payment of the sum of eight hundred dollars—the amount due him for his share—the promissory note of the company, " payable two months after its date, with interest, four shares [four hundred dollars] in stock of the company, and four hundred dollars in cash." Plaintiff took no other security, and the note was never paid.

The company became insolvent, and the trustees under the first mortgage brought an action to foreclose that mortgage for default in payment of the bonds issued under it. All persons who held recorded liens were made parties to that action; but the present plaintiff was not. A decree of foreclosure and sale was had; and at the sale, Mr. Potter, the present defendant, acting on behalf of himself and others, purchased the property of the company, including the parcel conveyed to them by the plaintiff and his co-tenants. Potter made a part payment at the time of the foreclosure sale. But before the principal part of the purchase money on the sale had been paid, the present plaintiff brought this action to establish his right to a lien on the parcel conveyed by him to the company, for the amount of purchase money unpaid.

*The referee* before whom the cause was tried held that plaintiff was entitled to such lien; and judgment in his favor was affirmed by the supreme court at general term. Defendants appealed.

*Clarkson N. Potter*, for defendants, appellants.

*F. E. Cornwell,* for plaintiff, respondent.

POTTER, J.—This case calls for the determination of one of the nicest questions of the law of natural equity. The plaintiff claims an equitable lien upon certain premises for unpaid purchase money. The defendants claim as purchasers under a foreclosure and sale of a mortgage, given to *bona fide* mortgagees. The facts and circumstances surrounding this case, as connected with the claims of both parties, are peculiar and unusual. They are an exception to, and a departure from, the ordinary dealings of parties making such claims, or defending against them. The inquiry, therefore, whether the plaintiff's lien exists, or did exist, and, if it did, whether the plaintiff did not waive it or allow a superior equity to come in to defeat it, calls for an examination into the effect and bearing of those, peculiar circumstances which distinguish this case from all others, or, at least, from all ordinary cases.

It may be remarked that the rule of equity which establishes the right of lien in the vendor, for unpaid purchase money of the lands sold to the vendee, is an anomaly in the law; and, though it exists in certain cases, and, perhaps, we may say generally, as between vendor and vendee, its existence depends upon and is controlled by no well settled rules, but, on the contrary, the existence of the lien is generally made to depend upon the peculiar state of facts and circumstances surrounding the particular case; that is, whether or not a case of natural equity is established, and, if so, whether it is not made to yield to higher or superior equities in some other person,—whether the party is not to be regarded as having waived it, or as having intended to waive or postpone it to another equity,—or whether, by the acts, or omissions to act, or by the neglect of the party claiming such lien, to enforce it within a reasonable time, the right is not lost as being the superior claim. These considerations control and vary the result as equity demands. It is true that it is sometimes an exceedingly difficult matter properly to adjust the equities between parties making this claim, and those having rights in hostility to it. This case

must be decided by applying to it equitable considerations.

The claim of the plaintiff in this action, if it ever existed as a *lien*, it must be conceded, remained a secret invisible lien or trust, undiscoverable by any search of the public records. It is not made a *constructive* lien by any positive law; and its existence could be known only to the plaintiff and his immediate vendee, except by actual notice given, which it is not claimed was given in this case. The defendants' claim, it is not denied, is that of a *bona fide* purchaser in good faith, upon a clear record evidence of title, for a valuable consideration, and without notice of the plaintiff's claim.

The defendants insist that though the plaintiff's demand was for the purchase money of the property, the sale was made under such circumstances that, by the principles of equity, an intent to waive the lien by the plaintiff, is *necessarily* to be inferred. This leads us to the examination, with some minuteness, of the attendant and surrounding circumstances, and into the nature, the object, and the intent of the several contracts and of the parties thereto, upon which the parties base their conflicting equities, and into the knowledge of the plaintiff of the object to which the property was to be devoted. This involves, also, the necessity of examining into the provisions contained in the charter of the Canandaigua & Niagara Falls Railroad Company, into the provisions of the statute under which they were incorporated, into the acts and probable motives of the parties in making their contracts, the knowledge of the parties of these provisions of the law, and what considerations the principles of equity will hold necessarily entered into the contemplation of the several parties at the time of making their several contracts.

As to all the *facts* in the case there is no conflict. No witness except the plaintiff was sworn in the case to any material fact. We may, therefore, assume as true, the facts found by the referee; and so far as other facts sworn to by the plaintiff appear, we may regard them as true for the purpose of showing his intent as to the question of retaining or of waiving his lien, upon which facts the law of equity must act. A reference to a few of these leading facts may be necessary, in order to

illustrate the view I have taken of the rights of the parties.

1. The plaintiff, before he conveyed his interest in the lands in question to the said railroad company, and previous to taking the notes in question, had been in their employ as their agent in acquiring land titles for them under their charter, and was also a stockholder in the company. The statute under which their charter was taken authorized the borrowing of money, upon a mortgage to be given upon their corporate property and franchises, for the purpose of completing, finishing and operating their road, and upon bonds to be issued, based on such mortgages. It is not, then, a forced or unreasonable presumption to hold, as against such an agent of the company as the plaintiff was, that he knew, not only the powers of this company in this respect under their charter, but also of their design and intent of mortgaging the lands he was so purchasing for them, in order to complete, finish, and put the road in operation ; and this legal presumption of knowledge is the stronger, from the fact that, at the time the plaintiff conveyed his land to them, the line of the road had been, and was then, laid out over his said land, and the franchises of the corporation existed over such land, and the one million dollar mortgage by the corporation upon all the rights and franchises of the corporation, and on all the lands and real estate then owned, and all that should be thereafter owned by the said corporation, and was then, and for two months previous had been, on record in the clerk's office of that county. This mortgage recited upon its face the object for which it was given, to wit : that the bonds might be issued on which to raise money, the proceeds of which were to be applied to the completion of the said road ; and it also recited the powers conferred in the statute for this purpose. To a mere stranger to their business and interests, the record of a mortgage like this, prior to his conveyance to them, would not be constructive notice of its existence, or of their object in making it ; but, to the agent of this corporation engaged in acquiring titles for them, for such a purpose, it would be more than *constructive* notice,—it is presumptive evidence, of a strong character, of *actual* knowledge to him,—that *bona fide* bondholders had advanced, or

*would advance,* their money (it is immaterial which) upon the faith of this mortgage, and upon the faith of the public records as to the title and incumbrances.

Upon the point in this case, that an equitable lien of a vendor for unpaid purchase money is deemed to be *waived,* by acts of the vendor, from which it may be presumed that he did not intend to retain his lien, such facts as are above stated are controlling. It is inconsistent with good faith on his part that he should retain a secret lien under such circumstances, against such persons as he knew already had, or who would, advance their money on the faith of a clear record. Such acts are incompatible with an intent on his part of retaining a lien; they evince that he did not, at the time of making the conveyance, contemplate the holding of a lien. It is not honest, it is not good faith on his part, that he should retain such a lien against subsequent *bona fide* bondholders.

It is safe to assert that there is no authority to be found in the books, with one exception, that lays down the rule that such a secret lien can be set up in a court of chancery, as equal or superior to the claim of the *bona fide* assigns, without notice, of the vendee. SUGDEN, in his work on Vendors, it is said, lays down the rule in favor of the vendor's lien; but Chief Justice MARSHALL, who examined this doctrine fully, in the case of Bayley *v.* Greenleaf, 7 *Wheat.* 46, repudiates the authority of SUGDEN, and says the weight of authority is the other way. The language of Chief Justice MARSHALL, in that case, is so clearly to the point, and so ably reasoned and forcibly expressed, that I transfer it to this opinion. He says: "To the world, the vendee appears to hold the estate, divested of any trust whatever; and credit is given to him, in the confidence that the property is his own, in equity as well as law. A vendor, relying upon this lien, ought to reduce it to a mortgage, so as to give notice of it to the world. If he does not, he is, in some degree, accessory to the fraud committed on the public, by an act which exhibits the vendee as the complete owner of an estate upon which he claims a secret lien. It would seem inconsistent with the principles of equity, and with the general spirit of our laws, that such a lien should be set up in a court of chancery, to the exclusion of *bona fide* creditors." He further

says, in effect, that the correctness of such a doctrine cannot be admitted until it has been *expressly* decided. It had not then (in 1822) been so decided. It has never been so decided since by any court of authority, within the limits of my research. If it was not then the law, it is not now. As to what acts constitute a waiver of such lien, see Brown *v.* Gilman, 4 *Wheat.* 255 ; Mackreth *v.* Symmons, 15 *Ves.* 349 ; Hare *v.* Van Deusen, 32 *Barb.* 92 ; Coit *v.* Fougera, 36 *Id.* 195, 198.

If, therefore, the plaintiff is to be regarded as having knowledge that the railroad company had the power by law to mortgage said lands, and had given or intended to give the said one million dollar mortgage for the objects authorized by the statute, and that such mortgage covered the franchises, and all lands then acquired, and that should be acquired, and that such mortgage would instantaneously, upon the plaintiff's conveyance, cover the lands the plaintiff should so convey; and that such mortgage would be the basis upon which money would be advanced by innocent bondholders in good faith ; if he knew the said railroad company intended to take immediate possession of the land so conveyed, and grade and put on structures with the money so to be obtained ; does not the necessary legal presumption arise, that the plaintiff intended to give them the power to mortgage, and that he intended to waive, or not to claim, his equitable lien thereon ? I think it does. True, the referee does not find as a fact that he did or did not so intend, but the intent from given facts is a question of law. The facts are undisputed in the case. The law resulting from undisputed facts need not be found. It is for the court to pronounce what the law is upon them.

But I am not willing to decide this case alone upon the ground I have been considering, as it was not the ground taken by the referee who decided the case. Suppose I am in error in the view I have taken, then,

2. The legal title of the land in question, upon which plaintiff's conveyance was made to the railroad company, vested in the latter. At the same instant, the lien of the mortgage which had before that been given by the railroad company, and which, before that time remained but an equitable claim upon " *rights to be acquired,*" according to the case of Seymour *v.* Canandai-

gua & Niagara Falls R. R. Co., 25 *Barb.* 284, 308, became a vested *legal* right upon the premises in question. Assuming now, for the purpose of the argument, the position urged by the plaintiff, that he did not intend to waive his equitable lien for the purchase money, all that he can then claim is, that his equitable lien attached at the same instant of time with the mortgage lien. Here, then, are two liens, accruing at the same instant, the one a secret equitable one, the other a legal, written, recorded, public one. The question would then seem to be, which of these liens has the priority? As between vendor and vendee alone, there is no question; but this case does not present such a question. The learned referee assumes, in his decision, that both these liens were mere equitable ones. I think this was not so as regards the mortgage. This mortgage was executed in pursuance of an express provision of a statute of the State. It therefore became a legal mortgage, created for a legal purpose, and its lien must have been a legal lien upon all the premises it covered. *L.* 1850, c. 140, § 28; Seymour *v.* Canandaigua & Niagara Falls R. R. Co., *supra.* This presents directly the question, which of two liens, accruing at the same instant of time, has the superior equity, the one, a constructive one only, arising upon a secret trust, by operation of law, or based upon the ground of its being a natural equity connected with the consideration of the property purchased, the other arising upon a specific legal lien based upon written contract, and made matter of public record?

Preliminary to the examination of this question, we may state what we understand to be settled law, generally, in regard to what is called a vendor's lien for unpaid purchase money. I do not deem it necessary for this purpose to inquire, whether it is founded upon a trust, or is to be regarded as a natural equity. It is not based upon an express contract, but, wherever it exists, it is to be implied, from the presumed intention of the parties at the time of making the contract; and, as we have said, whenever circumstances exist at the time, in the nature of the contract, or otherwise, from which it may be reasonably and necessarily inferred that the parties did not contemplate or intend to create this lien, it will be held not to exist, or to have been waived. The general rule, however, is, that, directly, as

10

between vendor and vendee, such a lien exists to the extent of the unpaid purchase money; and this extends to and against the heirs of the vendee, and his privies in estate, and against subsequent purchasers with notice of the lien; against purchasers who advance no new consideration; against voluntary assignees who are not, within the meaning of the rule of equity, *bona fide* purchasers; and against judgment creditors of the vendee; but it does not exist against purchasers under a conveyance of the legal estate, made *bona fide*, for a valuable consideration, without notice, if they have paid the purchase money. It would be in vain to attempt to reason against the conclusive argument of Chief Justice MARSHALL, in Bayley *v.* Greenleaf, *supra.* No court in this State has ever yet presumed to question the authority of that case; on the contrary, it is supported by cases in our books. See Garson *v.* Green, 1 *Johns. Ch.* 308. This case does not present a fair occasion to overrule Bayley *v.* Greenleaf for the first time.

However potent this latent, *unwritten* equity lien has been regarded in cases between vendor and vendee, which I am not disposed to question,—as between subsequent *bona fide* creditors, and the vendor, it cannot be held in a court of equity that it possesses a higher claim than would a *written* and unrecorded mortgage. In regard to the latter, a search of the public records protects a purchaser against it. Upon every sound principle of the law of equity, as well as public policy, *bona fide* purchasers and mortgagees who are about to invest money on the faith of title, should be held to have satisfied the demands of reasonable diligence, when they find an unincumbered record.

Upon the question of the superiority of liens, between such as are called *legal* and those which are called *equitable*, it is a maxim, coeval with the law of equity, that " where equities are equal the law must prevail." 1 *Fonbl. Eq.* c. 4, § 25 and note; *Francis' Maxims* 61; *Story Eq. Jur.* 64 *c.* In Hargrave & Butler's notes to *Coke upon Littleton*, 290 *b*, the rule is thus laid down : " If a person has the *legal* estate or interest in the subject matter in contest, he must, necessarily, prevail at *law* over him whose right is only *equitable*, and not, therefore, even noticed by the courts of law. This advantage he carries with him so far, even into a court of *equity*, that, if the equitable

claims of the parties are of equal force, equity will leave him who has the *legal* right in full possession of it, and will not do anything to reduce him to an equality to the other, who has the equitable right only."

⋅ In the case of Worrall *v.* Marlar, reported in a note to Bosvil *v.* Brander, 1 *P. Wms.* 459, 460 Lord THURLOW remarked, " that a court of equity has a much larger consideration for an assignment actually made by *contract* than for an assignment by mere operation of law." See also 9 *Ves.* 100 ; *Story Eq. Jur.* 1228, Bayley *v.* Greenleaf, 7 *Wheat.* 46, to the same effect.

There is another well established rule of equity " that where the defendant has an equal claim to the *protectiom* of the court of equity for his title, as the plaintiff has to the *assistance* of the court to assert his title, the court will not interpose on either side, for there the rule is " *in equali jure, melior est conditio possidentis.*" 4 *Inst.* 180 ; *Best on. Evid.* 293, § 252.

The referee held that, between these parties, " neither is prior, in time, to the other." The defendant, it is conceded, is in possession. The plaintiff, with whatever knowledge the law will presume against him, from his being the company's agent in obtaining lands for their said road, actually sold them his lands for that purpose. To have acted intelligently for them, it was his duty to know their powers and their designs. He had the opportunity of knowing them. He reserved no lien in his conveyance. If he knew of the railroad company's mortgage, or of their intent to mortgage, he did not exercise ordinary caution in omitting to reserve his lien in the conveyance. He took no written mortgage. Whenever the law gives this lien to a vendor, it gives it to him only for the purpose of working out an act of justice for him. The lien does not exist in his favor, as an inflexible rule, and, if it ever did, it ceases to exist when circumstances justify such a conclusion. It would be the clearest injustice to hold its existence, under the circumstances above stated, against *bona fide* mortgagees and bondholders, who have advanced their money on the faith of a clear public record as to title and incumbrances. It would be carrying the doctrine of these secret liens to an extent never before carried in any reported case in this State. It would overturn the case of Bayley *v.* Greenleaf ; it would render in-

secure all dealing in titles; and the object of, and securities intended by, our recording acts would, in effect, be destroyed.

It is not perceptible how a greater degree of diligence could be reasonably demanded of these mortgagees and bondholders, than a faithful and diligent search of the public records for a clear title and freedom from incumbrances. A diligence equal to this on the part of the plaintiff cannot be claimed. He had the power to have made his lien public. Diligence in his own behalf, and duty to subsequent dealers with the title, under such circumstances, called for this precaution of putting his claim where it could be subject to public inspection. This lack of diligence on the part of the plaintiff should, in equity alone, give preference to the defendants.

I think there is still another ground upon which to hold that the plaintiff did not intend or contemplate the holding of a lien for the purchase money. He took an agreement to receive the one half of the consideration in stock of the company, that is, to receive his pay in another commodity than money. It was an exchange of land for stock. No case has gone so far as to hold that the breach of a collateral agreement, even as between vendor and vendee, create a lien. If, at the instant of taking this collateral agreement, and to the extent of the amount mentioned in it, it was not a lien, a subsequent breach of it would not give relation back to such a lien. The decree makes this part of the consideration also a lien. This, I think, was also error.

3. The decree which the plaintiff did obtain is clearly unjust against the defendants in another sense. The *franchises* of this railroad company, with its rights and privileges and possibilities, are mingled in one with the mortgage upon the lands. This secret lien (if it exists) extended no further than to the land which the plaintiff conveyed; but the decree extends this lien, beyond the land, to the rights, franchises and possibilities to which the lien never could have extended. A sale under this decree carries with it rights not covered by the lien; it would sever and destroy the interest of *bona fide* holders, under the mortgage, of legal rights superior and prior to the claim of the plaintiff. These, as well as the public interests, under this decree, are all made to yield to the power of this secret, invisible

lien or trust. Before the plaintiff conveyed his land, this mortgage was a *legal* mortgage lien upon all the rights and franchises of this railroad company ; it was a *legal* mortgage upon all the lands that had been acquired, and was a mortgage in equity upon rights to be acquired, as was held by the case of Seymour *v.* Canandaigua & Niagara Falls R. R. Co., *supra.* These *franchises* covered the plaintiff's land in one sense, because the line had been adopted which crossed his lands. His land was purchased to be appropriated as a part of this road. So, if the plaintiff's lien attached to the land for its consideration money, it did not attach to the franchises, which he did not sell, but only to the land subject to the franchises, which he did sell. Assuming his lien to exist upon the land, it would present an anomalous and most extraordinary condition of liens. It would be this : the mortgagees would hold a *legal* mortgage upon the lands previously conveyed, and upon the rights and franchises of the road absolutely, and a legal recorded mortgage upon the lands conveyed by the plaintiff subject to the plaintiff's equitable lien; and the plaintiff's equitable lien on the lands conveyed by him would be subject to the *legal* lien previously acquired by the mortgagees upon the franchises, &c. A degree to enforce such a lien is in effect a severance of the franchises of the road from the road and its substantial interests, and a destruction of the corporation.

This effect, however, if the claim is good, must be submitted to. The plaintiff must recover in this case, if at all, upon the strength of his own case ; and, his claim being in equity, he is bound to prove it to be better, more just, more equitable, than the defendant's claim, whether the latter be in law or in equity. "*Actori incumbit probatio.*" Another rule applies, both in law and in equity. Where a loss must fall upon one of two innocent parties, both being free from blame, justice being thus *in equilibrio,* the party prosecuting must fail unless he prove his case to be the *better.* It is seldom the case that the scale of justice or of equity stands exactly upon an equipoise ; it will generally be found that some laches, some negligence or want of caution, some want of good faith, will cause it to preponderate upon the one side or the other. It seems to me that the keeping of this secret claim by the plaintiff, while standing

by and seeing *bona fide* mortgagees going on and improving it, advancing their money on it, upon the faith of a clear record, without his giving them notice of his claim, is a claim devoid of the merit of equity against the mortgagees. It is a claim not sustained by good faith, it is unsuited to the policy of the country, to the rights of unrestricted alienation, and to the security of a people whose titles are subject to such frequent changes, and where the public records are and should be the reliance and security against incumbrances and defective titles. Although the existence of such liens is conceded to be the settled law in a class of cases, and they can be enforced in equity, I think the plaintiff has not brought himself within that class. It seems to me that he has been guilty of such lachss, such want of caution, such want of good faith toward those who were expending their advances upon the property, that his lien, if he ever had one, is lost as against the defendants, and that he is estopped from setting it up or from prosecuting it against them.

4. It is insisted that the foregoing views do not apply to the case before us, inasmuch as the first mortgage upon the said railroad did not exist against the plaintiff's land until the conveyance was made by him, and that his lien was not parted with at the time of the conveyance; that it must, therefore, have existed prior to the lien by the mortgage, and that it continued after the conveyance; that the mortgage contained only an executory agreement for a lien, and that the advance was, therefore, made on the promise of a lien, and not on a present lien. All this we have considered. If the vendor's lien ever existed, as an implied lien, it is conceded that it was in force as against the railroad company as direct vendees. We have endeavored to show that it could not have been intended by the parties, vendor and vendee, that it should exist. We have shown, upon authority, that it did not exist against the *bona fide* purchasers under the mortgage. We have shown that when the written mortgage lien did take effect, it became superior to the lien by way of secret trust, which is only a trust between the parties, &c., to it. And the learned referee held, and, I think, correctly, that the first mortgagees held their lien upon the premises from the instant the plaintiff's land was

Fisk *v.* Potter.

conveyed to the railroad company. The referee then assumed (not in his finding of facts, but in his opinion) that the bondholders advanced their money upon the faith of the mortgage, before the plaintiff executed his conveyance. I do not think it material to the case whether it was advanced before or after the conveyance; but the referee is not sustained in his assumption by any fact in the case. There is no evidence in the case showing at what time the bondholders advanced their money. The circumstances of the case would be evidence to the contrary of the referee's opinion. The statute contemplates, first, the making the mortgage upon the road, &c., the putting it on record before the issuing of the bonds, and as the basis upon which they are to be issued; the bonds then require to be issued, to be negotiated, &c., to obtain the means to construct the road. All this would seem to require more time than expired between recording the mortgage and the plaintiff's conveyance, but it is sufficient to say the plaintiff has failed to prove it to be as assumed.

But, subsequent to this time, and after the advance of the money by the bondholders upon the first mortgage, the railroad company, in the year 1853, executed two other mortgages upon their said road, and upon the same lands, rights, privileges and franchises as in the first mortgage—one for seven hundred and fifty thousand dollars, the other for six hundred thousand dollars. In the suit to foreclose the first mortgage, the parties in interest in these two subsequent mortgages were made parties defendants, and all the rights and interests in the said premises, and of the parties thereto, were sold by virtue of the decree so obtained upon all three of the mortgages. The defendants in this action became the purchasers. If the question could arise whether the mortgagees, or their assigns, or the bondholders under the first mortgage, were purchasers in good faith, and for a valuable consideration, I do not see how this objection can be raised against the mortgagees and purchasers in good faith under the second mortgages. No question is raised whether the latter mortgagees were such in good faith. Surely, the lien of these latter mortgagees was better than the plaintiff's secret lien. On this ground, also, I think the defendants, as purchasers in good

faith, are to be protected against the plaintiff's claim; and, if his claim does exist, equity would postpone it, and make it junior to the second and third mortgages. The defendants have the superior equity.

5. It is also urged that the defendants are not *bona fide* purchasers without notice, for that Potter, one of the defendants, before he paid the whole purchase money, had notice of the plaintiff's lien. An effectual and perfect answer to this objection is, that the sale was a legal and a valid sale. The bid was five hundred thousand dollars. Fifty thousand dollars was paid down on the sale at the time of the bid, and before any notice given. By this sale, and payment of the bid, the purchaser became entitled to all the legal and equitable rights which any one of the mortgagees had held. The recipient of the money paid on the bid was not bound to refund. The purchaser was not bound to increase his bid by the amount of the plaintiff's claim, upon such a notice, but was bound to complete his purchase by paying the remainder of his bid. Notice before the payment of the purchase money, does not apply to a purchaser after a valid sale who purchases under *bona fide* mortgagees who hold their mortgages without notice. As to Potter, the purchase being legal, he having ratified it by the payment of fifty thousand dollars, the court would have compelled him to complete it, or forfeit what he had paid. The referee was clearly in error in supposing that a notice from the plaintiff to the purchaser after the sale, after he had paid fifty thousand dollars upon his bid, and but just before he paid the remainder, had any legal effect against him, and was sufficient to charge him as not being a purchaser in good faith. His purchase was made when he bid, when he paid the installment and signed the agreement to pay the balance. Upon the whole case, I am of opinion that the judgment was erroneous, and should be reversed.

A majority of the judges concurred.

Judgment reversed and new trial ordered, costs to abide event.