## STEVENS v. WATSON.

September, 1865.

A mortgage of all the property of a railroad company already or afterward to be acquired, in equity binds after-acquired property, as against the mortgagors, and all persons claiming under them, except purchasers for value and without notice ; and especially as against claimants under a junior mortgage, which by its terms is subject to the prior mortgage, and against junior judgment creditors.*
A specific equitable lien upon land is preferred to a subsequent legal lien by judgment.†

* Compare Seymour v. Canandaigua, &c. R. R. Co., 25 *Barb.* 284 ; S. C., 14 *How. Pr.* 531 ; Fisk v. Potter, vol. 2 of this series, p. 138 ; Benjamin v. Elmira, &c. R. R. Co., 49 *Barb.* 441 ; Watson v. Campbell, 28 *Id.* 421.

† Otherwise, where the judgment is one confessed to secure money advanced on the faith of it by the judgment creditor. Hulett v. Whipple, 58 *Barb.* 224. Where the equitable lien and the judgment lien come into existence at the same time, the former is not entitled to preference

Stevens v. Watson.

The legal presumption is that the after-acquired lands were necessary for the company, and were properly acquired by it.

Illegality by reason of usury cannot be imputed to the contracts of corporations as borrowers.*

John A. Stevens and others, as trustees, brought this action against Stephen V. R. Watson and others, and the Buffalo, Corning & New York Railroad Company, in the supreme court, to foreclose a mortgage given by the company to plaintiffs as trustees, in April, 1852, to secure the payment of one million dollars for which bonds were then issued.

The mortgage was expressed to cover the railroad, as well the part "now constructed as the part thereof which may or shall be hereafter constructed, together with the right of way of said road, lands, rails, bridges, buildings, erections, structures, fixtures and appurtenances thereunto belonging, and all the franchises or rights now owned by or belonging to the corporation or that may be owned by or belong to them hereafter; together with all the locomotives, tenders, cars, carriages, tools and machinery now owned or hereafter to be owned by said corporation, or in any way belonging or appertaining to said road and used thereon." There was a covenant for further assurance.

When this mortgage was executed the company was in process of acquiring title to the lands it was to use, and subsequently it acquired the title to a tract of land on which it located machine-shops and depot, and also purchased some rolling stock.

In 1853, and after acquiring the aforesaid property, the company made a second mortgage, in similar terms, to the defendants Miller and others, which mortgage was expressed to be subject to the one given to the plaintiffs.

Still later, Watson, who was made a defendant in this action,

---

unless it was created on a new consideration advanced on the faith of it. Dwight v. Newell, 4 N. Y. (3 Comst.) 185.

* See Butterworth v. O'Brien, 23 N. Y. 275 ; affirming 7 Abb. Pr. 456 ; S. C., 28 Barb. 187 ; and, as to national banks, First Nat. Bk. of Whitehall v. Lamb, 50 N. Y. 95 ; reversing 57 Barb. 429 ; and compare Matter of Wild, 8 Alb. Law J. 235.

recovered a judgment against the company, which remained unsatisfied.

Upon the trial of the present action of foreclosure, the second mortgage bondholders and Watson insisted that the plaintiffs' mortgage could not bind the after-acquired property as against them, and Watson also relied on a charge of usury in the plaintiffs' bonds.

By the Court.—Wright, J.—I am of the opinion that the appeal is without merit. The plaintiffs' mortgage was a valid lien upon all the property of the mortgagors (the railroad company) embraced within the terms of the mortgage, whether owned by the company at its date or whether subsequently acquired. It is unnecessary to go the length of the proposition (though I think it might be successfully maintained) that the plaintiffs, as mortgagees of the franchises of the corporation, are entitled to the subsequently acquired property as an incident to the franchise mortgaged, and as an accession to the subject of the mortgage. Be this as it may, in equity the mortgage of the subsequently acquired property is valid, and may be enforced against the mortgagors, and all other persons, except purchasers for value and without notice.

- The covenant for further assurance, contained in the plaintiffs' mortgage, operates as an equitable lien upon the after-acquired property.

The trustees in the second mortgage (Miller and Sampson) and Watson were not bona fide purchasers, nor entitled to preference. These trustees took their mortgages expressly subject to the plaintiffs' mortgage; and Watson, at most, had but a general lien by judgment on the equity of redemption. It is clear that, as against the mortgagors, the plaintiffs' mortgage is a lien in equity on all the property owned at its date or afterward acquired, and the defendant Watson, whether he claimed as a bondholder under the second mortgage, or as a judgment creditor, can have no greater right, as against the plaintiffs, than the railroad company (the mortgagors) have.

The trustees of the bondholders under the second mortgage, beside having notice of the prior mortgage, took their mortgages subject thereto, and a lien by judgment is always subor-

dinate to a prior equitable lien, whether of record or not, or executed or not. The plaintiffs' mortgage was, in equity, a specific lien on the real estate of the company, and a specific equitable lien upon land is entitled to a preference over a subsequent legal lien by judgment. If, as is now asserted, the plaintiffs' mortgage never was a lien on the lands acquired by the company at Corning for the erection of a machine-shop and depot, the judgment appealed from could do him no harm. But I think the judge rightly decided that the plaintiffs' mortgage was a lien.

The legal presumption is that these lands were necessary for the use of the company, and were properly acquired; and, if acquired for its use, they became annexed to the franchise and inseparable from it.

It was alleged in the answer of the defendant Watson, and proved on the trial, that some of the bonds secured by the plaintiffs' mortgage were negotiated and sold by the company at less than par, and, for this reason, it is urged the mortgage is usurious and void. The objection is susceptible of various answers; but a conclusive one is that the mortgage, being made by a corporation as the borrower, the statutes of usury have no application to it.

In Rosa *v.* Butterfield, 33 *N. Y.* 665, it was held that the act of April 6, 1850, (*L.* 1850, c. 172), prohibiting corporations from interposing the defense of usury, has the effect to except from the operation of the statutes of usury contracts of corporations stipulating to pay interest.

This being the construction given to the act mentioned, the contract in this case is not impeachable for usury.

If there is no statute limiting the rate of interest upon loans to corporations, illegality or taint of usury cannot be imputed to their contracts as borrowers.

The judgment should be affirmed.

All the judges concurred.

Judgment affirmed, with costs.