JERODINE E. POWERS, Respondent, *v.* ERASTUS B. FREEMAN, Appellant.

| 2 L | 127 |
| 82 AD | 365 |

(GENERAL TERM, FIFTH DISTRICT, DECEMBER, 1869.)

A mortgagee of chattels cannot obtain a lien upon other similar chattels, as against a subsequent purchaser thereof, through a verbal agreement between himself and his mortgagor to consider them substituted in the place of those described in the mortgage.

And to protect himself against a subsequent purchaser of the mortgaged property, he must pursue the statute respecting the filing of his mortgage literally.

Thus, where the mortgagor resided in the town of Antwerp, Jefferson county, and bought a farm and stock thereon, in the town of Wilna in that county, and gave a mortgage on the stock, and a few days after moved his residence to the farm, and the mortgage was filed in the latter town.—*Held,* that it was void as against a subsequent *bona fide* purchaser.

The payee and holder of an over due promissory note, given for money loaned by him to the maker, purchased personal property from the latter and surrendered the note as the consideration for the sale,—*Held,* that he was a *bona fide* purchaser, as against a prior mortgagee of the vendee, of whose mortgage he had no actual or constructive notice.

The decision in *Day* v. *Saunders* (3 Keyes, 347), commented upon and explained, and held to be decisive in this case.

APPEAL from a judgment rendered on the verdict of a jury.

The action was brought to recover the value of eight cows, which the plaintiff claimed to own, and which the defendant took and converted to his own use.

It appeared that on the 1st day of October, 1866, one Emerson E. Hall, who was the father of the plaintiff, entered into a written contract with the defendant to purchase from

him a farm of about 281 acres, lying in the town of Wilna, in the county of Jefferson, at the nominal price of thirty-five dollars per acre, but with an oral arrangement between them, that the real price should be thirty-three dollars per acre, and that all above that price, should be indorsed as paid on the contract. By the terms of the contract, Hall was to pay to the defendant for the first two years annually, the interest on all sums unpaid. In each of the next two years he was to pay $400 of principal in each year, and the annual interest on the whole sum, and the residue of principal was to be paid in each of the six following years, in equal payments, with interest annually. On the day that the writings were executed, there was indorsed on the contract $1,163.14, of which $600 was an actual payment then made by Hall to the defendant, and the residue was the difference between thirty-three dollars, the real price per acre, and thirty-five dollars which was the amount included in the contract.

On that same day, the defendant sold to Hall, eight cows, and in security for the purchase money, Hall executed to the defendant a chattel mortgage on them to the amount of $400, and Hall took possession of the cows, and continued in possession until he disposed of them as hereinafter stated.

At the time the chattel mortgage was executed, Hall resided in the town of Antwerp, in Jefferson county, and continued to reside there until the 17th day of October, aforesaid, when he removed to the farm so purchased by him in Wilna, and continued to reside there until after the commencement of this action; his daughter, the plaintiff, who was a widow, continued to live with him, though not as a servant, during all that time, as she had also done for several years previous thereto.

The chattel mortgage was never filed in the office of the clerk of the town of Antwerp, and was never filed anywhere, until the 2d day of November, 1866, when it was filed in the town clerk's office of the town of Wilna, where Hall then resided, and a copy of it was never thereafter filed anywhere.

Between the time of executing the chattel mortgage, and the fall of 1867, Hall sold and disposed of five of the cows which he had mortgaged to the defendant, and from time to time purchased others; and, on the 12th day of December, 1867, had in his possession three of the cows included in the mortgage, and five others, being those which he had so afterward purchased. And it was claimed by the defendant, that the five cows were disposed of by Hall under a verbal agreement between them that he might do so, and that those purchased by him should be substituted for those in the mortgage. And testimony offered to prove that, was ruled out by the court, to which the defendant's counsel excepted. No part of the indebtedness of Hall secured by the chattel mortgage was paid, and no subsequent payment was made toward the farm.

The plaintiff held two promissory notes against Hall, one for the sum of $300, and the other for $250, executed to her for moneys which she loaned to him in 1864, and 1865, the validity of which debts was not disputed, but was conceded on the trial.

On the 12th day of December, 1867, Hall sold to the plaintiff the eight cows in question, at forty dollars each, together with a quantity of hay, one buggy and one sleigh; in payment, as far as they would go, of the two notes, and the property was turned out to her, but they remained on the farm where she and Hall continued to reside, and on the same day she canceled and delivered up the $300 note to Hall, and the residue of the purchase money, being $107.50, was indorsed on the $250 note, which she retained in her possession. Both notes were past due at the time of this transaction.

On the 13th day of December, 1867, the defendant, while the cows remained on the farm, took all of them and drove them away, claiming them under the chattel mortgage, and converted them to his own use; the plaintiff being present, and forbidding his taking them, and claiming them as her own. The proof showed the cows to be worth forty dollars

each, making in all $320, for which sum the jury rendered a verdict for the plaintiff. The defendant gave evidence to show that the plaintiff had actual notice of the chattel mortgage before she purchased the cows. The plaintiff gave evidence to prove that she did not have any knowledge or notice of the mortgage, and the jury must have decided that conflict of testimony in her favor.

Judgment was entered for the plaintiff according to the verdict, and the defendant appealed

*Levi H. Brown,* for appellant.

*D. J. Wager,* for respondent.

Present—BACON, FOSTER, MULLIN and MORGAN, JJ,

By the Court—FOSTER, J.   There can be no question but that the sale of the eight cows, made by the defendant to Hall, on the first day of October, 1866, transferred all the title, which the defendant had to them, subject only to the mortgage which he took to secure the payment of the purchase price. The mortgage recites, " that Emerson E. Hall, of Antwerp, Jefferson county, is indebted to Erastus B. Freeman, of Leray, in the sum of $400, being for the security of eight red cows, on said Freeman farm in Wilna, *that have been sold with said Freeman farm to said Hall;* and this mortgage shall be void if said Hall shall pay up the first year's interest on the balance of purchase money for said farm, for the year 1867, as required in an article of agreement this day made ; and in case of non-payment of said interest, said Hall shall not be required to do more than return said cows, *or those of equal value.*   Now for securing the payment of the said debt, and the interest thereon, from the date thereof, to the said Erastus B. Freeman, I do hereby sell, transfer and assign to the said Erastus B. Freeman, the said eight red cows, *now the property of said Hall,* and on his farm in Wilna; *Provided* always, and this mortgage is on

the express condition," &c.  The sale to Hall was not conditional, but was absolute; and the only claim that the defendant could afterward have upon them was under his mortgage.  And if Hall afterward sold any of them, the only claim that defendant could have on them, against the purchaser, was in his character of mortgagee.

The court held that as to the five cows which Hall subsequently purchased, and which he sold to the plaintiff, the defendant had no legal claim, and that for those the plaintiff was entitled to a verdict.  To which the defendant's counsel excepted.  I have no doubt that this ruling was correct, and that no verbal arrangement which the defendant and Hall may have entered into after the execution of the mortgage, could, as between the defendant and a subsequent purchaser from Hall, subject the cows, not originally included in the mortgage to its terms, or give the defendant a lien thereon as such mortgagee.  If his mortgage was valid as against a purchaser in good faith, he might follow the mortgaged cows into the hands of the purchaser and reclaim them; but he could not in any event claim the five cows purchased by Hall of other persons by virtue of that instrument.  To allow this would be to uphold mortgages by parol.

Three of the cows in question were included in the mortgage, and it becomes important to inquire whether it was ever so filed as to protect the defendant against a *bona fide* purchaser of them from the mortgagor.

The statute, 4th Ed. 2 R. S., page 318, sec. 9, declares that "every mortgage or conveyance intended to operate as a mortgage of goods and chattels hereafter made which shall not be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage or a true copy thereof shall be filed as directed in the succeeding section of this act."  And the tenth section declares that " the instruments mentioned in the preceding section shall be filed

in the several towns and cities of this State where a mort-
gagor therein, if a resident of this State, shall reside at the
*time of the execution thereof ;* and if not a resident, then
in the city or town where the property so mortgaged shall be
at the time of the execution of such instrument." And the
same section requires such filing to be in the *Clerk's office* of
the town..

There being no question that Hall was a resident of the
State, and of the town of Antwerp, and that the mortgage
or a copy thereof was not filed in the office of the town clerk
of that town, the instrument was absolutely void as against
subsequent purchasers in good faith and the filing in the town
of Wilna in November, 1867, after Hall removed to that
town, did not restore vitality to it as against such purchasers.

It is not enough to say, that the filing in Wilna was
better calculated to give notice of the mortgage, than the
filing in Antwerp would have been. The answer to that
is, that the language of the statute is clear and explicit,
in requiring it to be filed in the town where the mort-
gagor resides at the time of its execution, and its require-
ments must be observed by the mortgagee, if he would
have his mortgage valid against such purchasers. And
he has no right to substitute for it anything else, though
he may think it would give much better information of its
existence than if he literally followed the requirements of
the statute. Persons who subsequently deal with the mort-
gagor in regard to the mortgaged property, are bound to take
notice of the requirements of the statute, and are bound to
look for mortgages where the statute declares they shall be
filed.

If therefore, the plaintiff was a purchaser of the cows in
good faith, the mortgage as to her was absolutely void, and
she was entitled to recover for the three cows, which were
included therein, as well as for the other five in question.

The jury have found that she had no knowledge or notice
of the mortgage ; that Hall's debt to her was an honest one ;
that he sold the cows to her in part payment of her debt, and

that she took the delivery of them and canceled and gave up to him the $300 note, and indorsed the residue on the other note, both being then past due. She is, therefore, a purchaser in good faith, provided 'the giving up and canceling of one note, and the indorsement upon the other of the balance of the purchase price, both being due, forms such a consideration for the purchase as is necessary to make one, in that respect, a purchaser in good faith.

We need not stop to inquire how the law in this respect has formerly been held by the courts in this State, essentially variant from the English decisions, and from the decisions of the courts of several of the other States, that while the giving up of a promissory note not matured, constituted such a consideration, that the giving up of a note past due did not. It is sufficient to say, that the decision of the Court of Appeals in the case of *Day* v. *Saunders* (3 Keyes, 347), has settled the law that there is no such distinction, and that the canceling and giving up a promissory note after it has become due furnishes a good consideration.

The distinction in that respect was, at best, quite vague, and must have proceeded upon the assumption that promissory notes, while maturing, were used as a medium of exchange; and, to a considerable extent, were used as a circulating medium, and took the place of money, and that they were to be regarded, in transactions founded upon them for a consideration, as money, while notes which were dishonored did not perform any such office. And the time probably was when such state of things was real; but in these days, the idea that notes maturing are, to any considerable extent, used as a medium of circulation, or perform any of the usual offices of money, is too fanciful to give them a preference, as a consideration, over such as have matured, the holder of which could at any time take legal measures to secure a preference over creditors of the payee whose debts were not due, who were not in a situation to take any legal measures to collect their debts.

And however this may be, the case of *Day* v. *Saunders*

removes the distinction, and holds that the giving up of either class of such notes constitutes a good consideration.

It is claimed, however, on the part of the defendant, that the decision in *Day* v. *Saunders* does not apply to this case. That was an action by the holder against the accommodation indorser of one Whipple, and on the trial it was established that Whipple was the maker of the note in suit, and that Sanders, the defendant, indorsed it for the accommodation of Whipple, and for the express purpose of turning it out in part payment for a farm which Whipple was about to purchase, and for no other purpose. That Whipple did not purchase the farm, but that he turned out the note to the plaintiff in payment of a prior note of Whipple to them, which was not due, and also in payment of one which was past due; and it had already been decided that so far as the giving up the note, which had not matured, the consideration to that extent was good; but the court in this district held that the giving up of the note past due did not furnish a consideration for the transfer of the note in suit, and that to that amount the plaintiff could not recover of Sanders. On appeal to the Court of Appeals, the judgment of the Supreme Court was reversed, and it was decided that the giving up of the note which was past due was also a good consideration, and constituted the plaintiffs holders for value to the whole amount of the note in suit, and entitled them to recover the whole amount of it from the indorser, although it had been fraudulently, as to him, put in circulation by the maker.

Now, if as against an accommodation indorser of negotiable paper fraudulently put in circulation by the maker, the holder, who gives up for it a promissory note of such maker past due is held to have paid a good consideration, it is impossible for me to discover any reason why the same thing would not constitute a purchase of personal property without notice as against the holder of a chattel mortgage, who himself neglects to give the notice which the statute requires him to give, to protect himself against such purchaser, a purchaser for

Powers *v* Freeman.

good consideration also. I think the principle applies equally
to either case, and is decisive of that question in this action.

It follows, then, that the judgment below must be affirmed
unless some of the rulings of the judge at the circuit were
erroneous.

The views which I have taken necessarily dispose of all
the questions raised on the trial, including the charge of the
Judge, except one.

Toward the close of the trial the defendant was recalled as
a witness in his own behalf, and after having been twice
examined in chief and cross-examined on his third examina-
tion, his counsel offered: "Brown—I offer to show that it
was then agreed between them before the sale and purchase
that they might exchange or sell those, exchange those for
others and sell those, and with the avails purchase others, and
that they agreed that they should be held, the title vesting in
Freeman, the same as those exchanged; and I propose to follow
it up by showing that after they were procured by Hall the
cows were pointed out; a formal delivery of them under the
agreement. Court.—He says they were pointed out to him.
Brown.—And that all of that was brought home to the notice
of the plaintiff before her pretended purchase." This was
objected to and excluded, and defendant's counsel excepted.

It is claimed for the defendant that this "proposition was
in substance to show that Hall purchased the five cows as
agent of and for Freeman, delivered them to him, and held
the same as his agent only; in other words, that those cows
were the property of Freeman and in his possession by Hall as
his agent, and that plaintiff knew the fact when she claimed
to purchase."

Now, there is not only nothing in the facts offered to be
proved which would tend to establish such agency, but there
is no evidence in the case from which such agency could be
inferred, nor is there anything to show that from the time
alluded to in the offer the defendant ever had the actual pos-
session of any of the cows until he took and drove them away
on the 13th of December, 1867. If the proof contained in

the offer would establish anything in favor of the plaintiff, it could only have been that the parties attempted by what they did, to subject the five cows purchased by Hall of others to the original mortgage, though it is not claimed by the offer that any mention was at that time made of the mortgage. And the jury having found upon the whole evidence that the plaintiff had no knowledge or notice of the mortgage, the proof that she knew of the transaction so offered in evidence could not possibly have aided the defendant in his defence.

The mortgage was originally filed by the defendant, on the 2d day of November, 1866. True, it was filed in the clerk's office of the town of Wilna, but so far as the defendant was concerned, it was a filing, and at all events, more than a year had elapsed after the making of the mortgage, and more than a year after such filing, and therefore when the plaintiff purchased the cows for a good consideration, although she might have known of the mortgage originally, or of the facts proposed to be proved, she had the right from the fact that a copy of it had not been filed at any time, and that much more than a year had elapsed, as well after the date of the mortgage as after the original filing, to presume, when she made the purchase that the claim of the defendant, whatever it may have been was satisfied and discharged.

The statute declares that chattel mortgages, filed pursuant to the act, shall cease to be valid as against the creditors, and subsequent purchasers and mortgagees in good faith after the expiration of one year from the filing thereof unless within thirty days, next preceding the expiration of the said term of one year, a true copy of the mortgage, together with a statement of the interest of the mortgagee in the property thereby claimed by him, shall be again filed in the office of the clerk of the town where the mortgagor shall then reside. (R. S., 4th ed., 318, § 11.)

If the mortgagee properly file his mortgage when he receives it, and he does not file a copy with the statement, within thirty days before the expiration of a year thereafter, subsequent purchasers for a valuable consideration, and with-

out notice that it is not paid, will be protected against it; and certainly the same protection will be afforded to them, if at the expiration of the year it has not been filed at all, or has been improperly filed originally, and no copy thereof, with statement, filed within the year.

It would not be enough, therefore, for the defendant to show that the plaintiff knew of the original mortgage; but he was bound also to prove, that when she purchased after the expiration of the year, she knew, or had notice, that the mortgage debt had not been paid.

The testimony offered and excluded could not have benefited the defendant, and its exclusion was proper.

The judgment should be affirmed.    All concurring.

Judgment affirmed.