HAMILTON H. SALMON and RICHARD A. H. BRANDT, Appellants, *v.* CHARLES J. NORRIS, Respondent, Impleaded with HYMAN BERMAN and Others.

*Chattel mortgage — extent of its invalidity when not renewed — who is a* bona fide *purchaser — inquiry as to a prior chattel mortgage not refiled — statement, where the year has not expired, that it was given to protect the mortgagor — action in equity to determine questions as to priority.*

A chattel mortgage, not renewed within a year after it is filed, ceases to be valid and is of no more force or operation, as against subsequent creditors or mortgagees, in good faith, than if it had never existed.

A *bona fide* purchaser is one who buys property of another, without notice that some third party has a right to or interest in such property, and pays a full

---

* *Sic.*

price for the same at the time of such purchase or before he has notice of the claim or interest of such other in the property.

A chattel mortgagee who is informed by the mortgagor at the time he takes the mortgage that another chattel mortgage covering the same property, which had been filed more than a year previous and had not been refiled, had been paid, is not required to make further inquiries in regard to the truth of the mortgagor's statement.

If, at the time a chattel mortgage is executed, the mortgagor informs the mortgagee that a previous chattel mortgage, which had been filed and the time for refiling which had not expired, had been made to protect the mortgagor, presumably against creditors, it is the duty of the mortgagee to make further inquiry, and, if he neglects to do so, he is not a subsequent creditor or mortgagee in good faith.

An action in equity may be brought to determine questions of priority between several chattel mortgages covering the same property.

APPEAL by the plaintiffs, Hamilton H. Salmon and another, from that portion of a judgment of the Supreme Court in part in favor of the plaintiffs and in part in favor of the defendant Charles J. Norris, bearing date the 14th day of March, 1902, and entered in the office of the clerk of the county of Kings, upon the decision of the court rendered after a trial at the Kings County Special Term, adjudging that as to the defendant Charles J. Norris the plaintiffs are not entitled to the injunction asked for and dismissing the complaint as to said defendant.

*John B. Gleason* [*Charles J. McDermott* with him on the brief], for the appellants.

*Horace Graves,* for the respondent.

GOODRICH, P. J.:

This action is in equity; the complaint prays judgment that a chattel mortgage made to the plaintiffs No. 3 (below) is a lien on the chattels therein mentioned and is prior in lien to two chattel mortgages thereon, Nos. 1 and 2, assigned to the defendant Norris; that such mortgages are fraudulent as against the plaintiffs, and that they should be permitted to sell the chattels free from all liens. The court dismissed the complaint and the plaintiffs appeal.

The mortgages in question are as follows: No. 1, mortgage by Hyman Berman to T. B. Chapman, for $400, dated November 25, 1899, filed November 27, 1899. No copy of this mortgage was ever refiled. No. 2, mortgage by Hyman Berman to Philip Rosen-

berg, for $450, dated March 12, 1900, filed March 14, 1900. No copy of this mortgage was ever refiled. No. 3, mortgage by Hyman Berman and Vernon Hebner to the plaintiffs, dated January 30, 1901, filed January 31, 1901, to secure moneys due or to become due for sales of goods made or to be made. No. 4, mortgage by Hyman Berman, Pappy Y. Berman, Vernon Hebner and the American Bobbin Company to Charles J. Norris, for $1,200, dated July 11, 1901, filed July 13, 1901.

In January, 1901, the plaintiffs contracted to sell the defendants Berman and Hebner lumber, part of which was delivered on January twenty-sixth and part in February and May. After the delivery of the first lot, the plaintiffs refused to sell or deliver any more except for cash before delivery. Berman thereupon proposed to execute a chattel mortgage on the furniture and effects in the factory in which he was doing business with Hebner under the name of the American Bobbin Company. The plaintiffs caused search to be made for prior mortgages and found mortgages Nos. 1 and 2 on record, but no renewal of No. 1. They were informed by Berman that No. 1 was paid and that No 2. was without consideration and invalid. The court has found that thereupon mortgage No. 3 was executed for the purpose of securing money then due for goods sold and delivered by the plaintiffs to Berman and Hebner and for the purpose of obtaining forbearance from the plaintiffs and credit and as security for future sales; and that the plaintiffs sold and delivered to Berman and Hebner other lumber amounting with previous sales to $987.14, upon which $350 has been paid, leaving due $637.14. On sufficient evidence the court has also found that on April 12, 1900, Chapman and Rosenberg respectively assigned their mortgages to the defendant Norris, who paid them the amount named in the mortgages.

There can be no question that by section 95 of the Lien Law (Laws of 1897, chap. 418, as amd. by Laws of 1901, chap. 219) a chattel mortgage not renewed within the year after its filing ceases to be valid and is of no force or operation whatever as against subsequent creditors or mortgagees in good faith, any more than if the mortgage never existed. (*Tremaine v. Mortimer*, 128 N. Y. 1; *Karst v. Gane*, 136 id. 316; *Matter of New York Economical Printing Co.*, 110 Fed. Rep. 514.) In the *Karst* case it was held

that the word "creditors" includes all creditors who are such while the *goods* are in possession of the mortgagors, irrespective of the time when they became such, that is, whether before or after the mortgage. The chattels remained in the possession of Berman and Hebner till September 13, 1901, when they were taken into possession by the defendant Norris for the purpose of foreclosing his two mortgages.

As mortgage No. 1 was never refiled, it had no force or operation as against the plaintiffs when, and provided, they became creditors or mortgagees in good faith of Berman and Hebner, in January, 1901. This brings us to the question whether or not they were creditors or mortgagees in good faith. When the plaintiffs became creditors in January, although mortgage No. 1 might have ceased to be valid as against them, they took no title to the chattels by reason of that fact, nor until the execution of their mortgage, No. 3. The court found that they were informed by Berman and Hebner that the Chapman mortgage, No. 1, had been paid; that they relied thereon and forbore to enforce their previous claim and also sold Berman and Hebner other goods, the price of which was within the terms of and covered by their mortgage. The question arises, whether good faith required the plaintiffs to make further inquiries, as, for instance, of Norris. It was held in *Powers* v. *Freeman* (2 Lans. 127) that it would not be enough for the holder of an unrenewed mortgage to show that a subsequent purchaser of the chattels had notice of the mortgage, but that he must also show that when the purchase was made after the expiration of the year the purchaser knew or had notice that the mortgage debt had not been paid.

A *bona fide* purchaser is one who buys property of another without notice that some third party has a right to or interest in such property and pays a full price for the same at the time of such purchase or before he has notice of the claim or interest of such other in the property. (*Spicer* v. *Waters*, 65 Barb. 227; *Jewett* v. *Palmer*, 7 Johns. Ch. 65.)

*Stearns* v. *Gage* (79 N. Y. 102) involved the question whether a purchaser of real estate, for a valuable consideration, was chargeable with constructive notice that the conveyance was made to him by his vendor with intent to defraud his creditors under 2 Revised Statutes (137, § 5), which provided that the statute as to fraudulent

conveyances " shall not be construed, in any manner, to affect or impair the title of a purchaser for a valuable consideration, unless it shall appear that such purchaser had previous notice of the fraudulent intent of his immediate grantor." The court said (pp. 107, 108): " This plainly means that actual notice shall be given of the fraudulent intent or knowledge of circumstances which are equivalent to such notice. Circumstances to put the purchaser on inquiry where full value has been paid are not sufficient. If he knew of the fraud, that would be enough. * * * No authority has been cited which sustains the principle that a purchaser for a valuable consideration, without previous notice, is chargeable with constructive notice of the fraudulent intent of his grantor; and such a rule would carry the doctrine of constructive notice to an extent beyond any principle which has been sanctioned by the courts, and cannot be upheld."

Judge SELDEN said in *Williamson* v. *Brown* (15 N. Y. 354, 358): " I can see no foundation in reason for a distinction between the evidence requisite to establish a want of good faith, in a case arising under the recording act, and in any other case; and the authorities here referred to are sufficient to show that no such distinction is recognized, at the present day, by the courts." At page 362 he also said: " The true doctrine on this subject is, that where a purchaser has knowledge of any fact sufficient to put him on inquiry as to the existence of some right or title in conflict with that he is about to purchase, he is presumed either to have made the inquiry and ascertained the extent of such prior right, or to have been guilty of a degree of negligence equally fatal to his claim, to be considered as a *bona fide* purchaser."

We are thus compelled to decide whether actual notice of the existence of mortgage No. 1 compelled the plaintiffs to make other inquiries than they made. Berman told them the mortgage was paid. It may be said that naturally they would also make inquiries of the mortgagee. But the mortgagee, by his failure to refile his mortgage, had said in effect that it was paid, or at least that it was invalid as against subsequent creditors or mortgagees in good faith. We think the mortgagee and his assignee, the defendant Norris, are estopped to deny the invalidity of mortgage No. 1 as against the plaintiffs.

As to mortgage No. 2, the plaintiffs' rights are somewhat different. At the time of the plaintiffs' sale to Berman and Hebner and the execution of their mortgage, the time for refiling mortgage No. 2 had not expired. It was still a valid mortgage as against them, and continued to be such until the expiration of the year; that is, March 14, 1901. The court has found that the defendant Norris, on April 12, 1900, took an assignment of mortgage No. 2 from Rosenberg, the mortgagee, and paid him $400 therefor. It is true that Berman informed the plaintiffs that this mortgage was made to protect him, presumably against creditors, but this was a statement of a fraudulent intent which ought to have put them on further inquiry, and their failure to make any further inquiry brings them within the principle laid down in the *Williamson* case, above cited. Our conclusion is that as to mortgage No. 2 the plaintiffs were not subsequent creditors or mortgagees in good faith.

The defense, that the plaintiffs may not resort to equity because they have certain actions at law, is not tenable. There were conflicting claims and questions of priority, and these can best be adjusted in equity.

The court found that at the time of the execution of the plaintiffs' mortgages the chattels were owned by one Pappy Y. Berman, who is not a party to this action, and the plaintiffs have excepted to that finding. There is no evidence to support it except such as may be inferred from articles of partnership between her and the defendant Hebner, dated August 24, 1900, which were executed on her behalf by the defendant Berman, but that is not evidence of ownership, and it may be said that there is no statement therein that she was the owner, but only a clause, that she would, as her share of the proposed capital of the firm, furnish certain chattels which may or may not be those covered by any of the mortgages.

Our judgment is that the plaintiffs are entitled to priority over mortgage No. 1 to the extent of the sales actually made by them, but that mortgage No. 2 is entitled to priority over the plaintiffs' mortgage.

The judgment should be reversed and a new trial granted.

BARTLETT, HIRSCHBERG, JENKS and HOOKER, JJ., concurred.

Judgment reversed and new trial granted, costs to abide the final award of costs.