I have carefully examined all the authorities cited in the briefs submitted, and am satisfied that the motion to strike out the answer should be granted.

Motion granted, with ten dollars costs.

---

UNITED STATES MORTGAGE AND TRUST COMPANY, Respondent, *v.* EASTERN IRON COMPANY and Others, Defendants, Impleaded with ROBERT E. McLEAR and Others, Appellants.

Third Department, June 25, 1907.

**Mortgage on after-acquired property — priority of mortgagee over purchaser under mechanic's lien.**

Under a mortgage executed by a corporation to secure bonds and covering lands thereafter to be acquired by the mortgagor and described in the mortgage, the lien of the mortgagees on lands subsequently acquired by the mortgagor is superior to the title acquired by purchasers on the foreclosure of a mechanic's lien on the same lands filed subsequent to the acquisition of the fee by the mortgagor.

KELLOGG and SEWELL, JJ., dissented.

APPEAL by the defendants, Robert E. McLear and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of St. Lawrence on the 2d day of November, 1906, upon the decision of the court rendered after a trial at the St. Lawrence Special Term.

*H. Walter Lee, Robert E. McLear* and *Arthur W. Orvis*, in person, and *Thomas Spratt*, for the appellants.

*Alexander S. Andrews*, for the respondent.

Judgment affirmed on opinion of McLAUGHLIN, J., at Special Term.

All concurred, except KELLOGG and SEWELL, JJ., dissenting.

680   United States Mortgage & Trust Co. *v.* Eastern Iron Co.

Third Department, June, 1907.                    [Vol. 120.

The following is the opinion delivered at Special Term:

McLaughlin, J.:

This action is brought to foreclose a mortgage on certain real estate in the county of St. Lawrence, given by the defendant Eastern Iron Company to secure the payment of 250 bonds of the par value of $1,000 each and interest thereon. The defendants McLear, Orvis and Lee interposed answers which raise an issue as to the title or interest of the plaintiff in a portion of the land.

There is little dispute as to the material facts involved, and which, so far as material to the question to be determined, are substantially as follows: On the 2d of March, 1903, the mortgage was duly executed by the iron company and delivered to the plaintiff. It conveys "the interests of the mortgagor now held or hereafter to be acquired, whether in fee or by leasehold or otherwise, in and to all and singular the following described property."

Then follows a description of the real estate, consisting of about 260 acres, and then continues: "With full and uninterrupted right of ingress, egress and regress to, from and across said premises and the right to occupy so much of said premises as may be necessary or proper for the purpose of conducting mining operating thereon." It further conveys "all real estate and interest in real estate and rights appertaining thereto and all buildings, erections, plants, machinery, tools, implements and fixtures, all mines, minerals and ore beds, * * * and all the franchises and property, real or personal or mixed, wheresoever situate, which the mortgagor now owns or shall hereafter acquire, whether in fee simple absolute or as lessee or assignee therein," and then follow covenants of warranty.

The bonds — payment of which the mortgage was given to secure — were subsequently sold, some at par and some at seventy-eight, to purchasers for value, and they are now outstanding and remain wholly unpaid, both principal and interest, and the whole amount, according to the terms of the mortgage, is due.

When the mortgage was given and the bonds sold the iron company did not own the fee title to about eleven acres of the land described, but did own the iron ore and minerals thereon, together with the right to mine and remove the same. The fee title, however, to this parcel was, subsequent to the execution of the mortgage, acquired by deed of conveyance, dated June 11, 1903, acknowl-

edged on the second of July following, and recorded in the St. Lawrence county clerk's office on the 25th of September, 1903. There is nothing to show when this deed was delivered, except in so far as that fact may be inferred from its date, acknowledgment and record. On the 3d of June, 1903, the iron company made a contract with one Carpenter for the erection of ten houses on the eleven-acre parcel, and for which it agreed to pay him $6,250. Carpenter, immediately following the execution of the contract, commenced work and completed the same on or about the 31st of August, 1903. The iron company paid a part of the contract price, but neglected to pay $1,438, and on the 17th of November, 1903, Carpenter filed a notice of mechanic's lien against the eleven-acre parcel for the balance due him, and on the 19th of December, 1903, commenced an action to foreclose his lien. The action was prosecuted to and resulted in a judgment of foreclosure on the 25th of May, 1904, in pursuance of which, on the 13th of July, 1904, the premises were sold to the defendants McLear, Orvis and Lee. At and immediately prior to the sale, the iron company gave public notice that the land about to be sold was subject to the lien of the plaintiff's mortgage. The defendants McLear, Orvis and Lee had knowledge of the notice thus given, but notwithstanding that fact they made their respective purchases and subsequently accepted the referee's deed and paid the purchase price.

The answers interposed by them are substantially the same. They allege title under this sale superior to that claimed by the plaintiff. The plaintiff in this action was not a party to that action, and, therefore, the judgment there obtained in no way affects it. It claims that the fee title which it obtained under the conveyance referred to is superior to that of the defendants McLear, Orvis and Lee under that provision of the mortgage which purports to cover after-acquired property.

The sole question presented, therefore, is whether the provision in the mortgage purporting to convey to the mortgagee after-acquired property is, in equity, sufficient to defeat the claim made by McLear, Orvis and Lee. After a careful consideration of the question I am convinced that it is. Here was a mining corporation which required for the prosecution of its business a large amount of capital, and for the purpose of acquiring it issued the bonds and

gave the mortgage in suit to secure the payment of the same. The mortgage, upon its face, purports to cover after-acquired property. Such property was real estate in which it — at the time the mortgage was executed — had everything except the naked fee. It was included in and covered by the property described. The iron company had a right to issue its bonds for the purpose of raising money for the prosecution of its business or for the exercise of its corporate right, privileges or franchise, or for any other lawful purpose of its incorporation, and to secure the payment of money thus raised to give a mortgage upon its property. (Stock Corp. Law, § 2.*) This it did and thereupon the statute, as it seems to me, contemplated that for the money thus obtained real estate thereafter acquired should be pledged for the security of its payment.

Prior to the conveyance to the iron company the mortgagee had an equitable claim on property to be acquired which, when the conveyance was in fact made, ripened into a legal one. (*Fisk* v. *Potter*, 2 Abb. Ct. App. Dec. 138; *New York Security Company* v. *Saratoga Gas Company*, 88 Hun, 569; S. C. affd., 157 N. Y. 689.)

The law seems to be well settled, at least in this State, that a mortgage given by a railroad corporation which purports to cover after-acquired real estate, and such real estate is acquired, creates in equity a lien upon such property superior to the lien of a subsequent incumbrancer by mortgage or judgment. (*Seymour* v. *Canandaigua & Niagara Falls Railroad Company*, 25 Barb. 284; *Benjamin* v. *Elmira, Jefferson & Canandaigua Railroad Company*, 49 id. 447; *Stevens* v. *Watson*, 4 Abb. Ct. App. Dec. 302; *Platt* v. *New York & Sea Beach Railway Company*, 9 App. Div. 87; S. C. affd., 153 N. Y. 670; see, also, *New York Water Company* v. *Crow*, 110 App. Div. 32), and such seems to be the rule applied in the Federal courts. (*Mitchell* v. *Winslow*, 2 Story [U. S.], 630; *Central Trust Company* v. *Kneeland*, 138 U. S. 419.)

I can see no reason why the rule applicable to railroad corporations is not equally applicable, under the statute as it now exists, to corporations similar to the iron company. The statute giving to the iron company the right to mortgage its property (Stock Corp. Law,

---

* See Laws of 1892, chap. 688, § 2, as amd. by Laws of 1901, chap. 354, and subsequently amd. by Laws of 1905, chap. 745.— [Rep.

§ 2) is certainly not less broad in this respect than the one giving a railroad company the right to mortgage its property. (Laws of 1892, chap. 676, § 4, subd. 10.\*)

This view is not in conflict with the rule laid down in *Rochester Distilling Company* v. *Rasey* (142 N. Y. 570), and the other authorities cited by the defendants. The *Rochester Distilling Company* case is based upon the rule that a mortgage of chattels, having no actual or potential existence when the mortgage is given, is void as to intervening creditors and this is fairly illustrative of the other cases cited. But this rule has no application to a mortgage of the character of the one here under consideration. The contesting defendants do not stand in the position of innocent purchasers for value. They not only had constructive notice of the claim of the plaintiff that the eleven-acre parcel was covered by the mortgage because it was included in the description, but they also had actual notice prior to the sale that a claim was made that such parcel was in fact covered by it. (*Salmon* v. *Norris*, 82 App. Div. 362; *Shneider* v. *Mahl*, 84 id. 1.) Only innocent purchasers for value, without notice, can defeat a mortgage, unless it be fraudulent. At most the defendants here contesting can only claim what Carpenter could, had he bid in the property at the sale. He did not acquire a lien until the 17th of November, 1903, when his notice of lien was filed, and prior to that time the deed of conveyance to the iron company was given and recorded, and thereupon, if the foregoing views be correct, whatever interest the iron company had was, in equity, vested in the plaintiff to secure the payment of the bonds.

At the trial some evidence was offered to the effect that the houses in question were not necessary in the prosecution of the iron company's business, but taking all the evidence together, I think it fairly establishes they were erected because they were necessary to provide for the workmen employed by the iron company in the prosecution of its business. A finding to the contrary would be against the weight of evidence.

I am of the opinion that the plaintiff is entitled to judgment for the relief prayed for in the complaint.

---

\* See Railroad Law (Laws of 1890, chap. 565), § 4, subd. 10, added by Laws of 1892, chap. 676, and amd. by Laws of 1902, chap. 504.— [Rep.