The People's Trust Company, as Trustee, Respondent, *v.* The Brooklyn and Rockaway Beach Railroad Company and Others, Defendants, Impleaded with Louis R. Schenck, as Administrator, etc., of Johanna Schenck, Deceased, Appellant.

Second Department, October 4, 1907.

Mortgage — after-acquired property — when lien of mortgage superior to judgment.

When a mortgage given by a railroad company covers all its lands then owned or thereafter to be acquired " necessary or convenient for the use, occupation, operation and enjoyment of said railroad," including lands then used for amusement purposes, the lien of the mortgage extends to lands under waters adjoining the amusement property thereafter acquired, and is superior to the lien of a judgment recovered against the mortgagor subsequent to the mortgage.

Appeal by the defendant, Louis R. Schenck, as administrator, etc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 19th day of September, 1906, upon the decision of the court rendered after a trial at the Kings County Special Term.

*Rufus O. Catlin,* for the appellant.

*George W. Wingate,* for the respondent.

Judgment affirmed, with costs, on the opinion of Mr. Justice Sutherland at Special Term.

Hirschberg, P. J., Hooker, Gaynor, Rich and Miller, JJ., concurred.

The following is the opinion delivered at Special Term:

Sutherland, J.:

In the judgment foreclosing the mortgage described in the complaint a question was reserved for further adjudication whether the lien of the judgment recovered by the defendant Louis R. Schenck, as executor of the will of Johanna Schenck, deceased, against the mortgagor, the Brooklyn and Rockaway Beach Railroad Company, after the mortgage was made, is superior to the right, interest or lien of the plaintiff under said mortgage upon lands

under water adjacent to the shore of Jamaica bay, acquired by the
mortgagor after the mortgage was given and before the judgment
was recovered.

The mortgage in question was made April 28, 1891. The lands
under water were acquired by the company from the State in Octo-
ber, 1894, and September, 1897. The Schenck judgment was
recovered and docketed May 12, 1899. The mortgage purports to
cover all property owned by said railroad company at the time
of said mortgage, or thereafter to be acquired by said company in
connection with the railroad described therein, together with all
improvements or additions to be made to any of said property, "and
also all and every other estate, interest, property or thing which
the said party of the first part (the mortgagor) owns and holds, or
may and shall hereafter acquire and hold, necessary or convenient
for the use, occupation, operation and enjoyment of said railroads
hereinabove described, or any of them, leases and property rights,
privileges and franchises, or any part or portion thereof." The rail-
road in question was owned and operated by said company from the
junction of Broadway and Vesta avenue, in the city of Brooklyn, to
the shore of Jamaica bay, in the town of Flatland, at what is called
"Canarsie Point," where docks were owned and maintained and a
ferry operated by said company between its shore terminal and
Rockaway Beach. The ferry boats, franchise, etc., were included
in the mortgage. At the shore terminal, when the mortgage was
made, the company owned a considerable tract of land, upon which
it maintained the usual turnouts, switches, sidings, depots, etc., with
pavilions and various accessories for attracting and amusing the
patrons of the road, and the company's land extended along the
shore of the bay for some distance northerly from the termination
of the track at the ferry dock, to the mouth of Canoe creek, so called,
where the shore line bends at an acute angle to the southeast. The
shore east of Canoe creek is owned by the company for several hun-
dred feet, and within the angle formed by the shore are the twenty-
nine acres of land under water in dispute here. Not all of the land
owned by the company at that point was in actual use for railroad
purposes when the mortgage was made, nor has it all been so used
since; but it was so situated as undoubtedly to make it advantageous
for the company to own and control said land in order that the

development of the shore resort might be promoted so as to increase the patronage of the road and exclude such features in the immediate surroundings as would prove objectionable to the patrons. It has not been contended that the upland was not all subject to the lien of the mortgage, although said upland is not described by metes and bounds, but in general terms. The contest is confined here to the lands under water, which were acquired after the mortgage was made, and which the judgment creditor insists are not so related to the road itself, either in its present status or future development, as to be fairly included within the terms of the mortgage in respect to after-acquired property "necessary or convenient for the use, occupation, operation and enjoyment of said railroads," or acquired "in connection" therewith.

I regard the matter as open for decision now, even so far as it involves a question of fact, although the judgment creditor Schenck did not serve an answer in the case, the clause in the judgment reserving this matter for further adjudication being sufficient in my opinion to do away with the necessity of a formal answer.

It is clear that the lands under water in controversy here, if not necessary for the proper operation of the road, are and were, when acquired from the State, a desirable addition to the upland properties already owned by said road. If a severance of proprietorship of upland and land under water were to be made, and the land under water should come into the hands of interests hostile to that of the road, it is easy to see that the value and utility of the upland estate might be greatly diminished; and, while it would be difficult to find as a fact, from the evidence here, that all of the upland and adjacent land under water is strictly necessary for the operation of the road as such, yet the properties at the time of the foreclosure constituted one entire terminal tract which could be used in the interest of the road, if sufficiently developed, for amusement purposes; and if any portion were to be disposed of for other purposes such disposition should be controlled by friendly interests if the welfare of the road itself is to be considered as of the greatest weight.

These considerations are important as bearing upon the probable intention of the parties to treat the property as a unit so far as the mortgage is concerned. The question of power to mortgage

after-acquired property is not open to debate. It is settled indisputably. (*Stevens* v. *Watson*, 4 Abb. Ct. App. Dec. 302.) The point for adjudication here is, was the land under water so related to the upland and to the docks and terminal utilities of the road as to fall within the class of after-acquired property which the language of the mortgage shows it was the intention of the parties to subject to the lien thereof. (*New Orleans Pacific Railway Co.* v. *Parker*, 143 U. S. 42; Jones Corp. Bonds, §§ 94, 95, 103.) And under the rule laid down in *Archibald* v. *N. Y. C. & H. R. R. R. Co.* (157 N. Y. 574) that lands under water owned by a mortgagor at the time of the execution of the mortgage, but not specifically described therein, will pass as an appurtenant to the adjacent upland described in the mortgage, it seems clear that the lien of the mortgage held by the plaintiff attached to the lands under water in the case at bar as soon as said lands were acquired by the railroad company, and that the lien of the Schenck judgment is inferior thereto; and it is so found and determined.

Accordingly an order may be made directing the payment to the plaintiff of the amount set aside to await the decision of this question.