In re NIAGARA LEAD & BATTERY CO.

(District Court, W. D. New York. January 13, 1913.)

BANKRUPTCY (§ 189*)—LIENS—CHATTEL MORTGAGE—AFTER-ACQUIRED PROP-
ERTY.

Where a mortgage securing a bond issue by a corporation purported to cover after-acquired property, but it appeared that the proceeds of the bonds were intermingled with other funds realized by the bankrupt from sales of manufactured articles, and that after-acquired property, consisting of machinery, tools, and office fittings, was purchased with such money, such after-acquired property was not subject to the mortgage lien as against the corporation's general creditors in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 286–289, 291–295; Dec. Dig. § 189.*]

In Bankruptcy. In the matter of bankruptcy proceedings of the Niagara Lead & Battery Company.. On review of a referee's decision awarding certain after-acquired property to the mortgagee. Reversed, and decision rendered in favor of trustee.

Gibbons & Pottle, of Buffalo, N. Y., for trustee.

Bushnell, Dolson & Kent and Rebadow & Ladd, all of Buffalo, N. Y., for bondholders.

HAZEL, District Judge. The question for determination is whether certain after-acquired personal property used in the business of the defendant, and consisting of machinery, tools, and office fittings, passes under an after-acquired property clause in the mortgage to secure the payment of a bond issue, so that such property can be held by the mortgagee as against the trustee in bankruptcy, who represents the general creditors. The evidence shows that the proceeds of the sale of the bonds were intermingled with other funds—funds realized from sales by the bankrupt of manufactured articles—and that the after-acquired property was bought with such money. The referee followed the decision of this court in Re Medina Quarry Co. (D. C.) 24 Am. Bankr. Rep. 769, 179 Fed. 929, wherein it was substantially held

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that a mortgage, reciting that the money raised by it was to purchase quarries, machinery, and equipment, covered certain after-acquired real and personal property, as from the language contained in the mortgage it appeared that the creditors had notice of the scope of the lien when their dealings with the mortgagor began. The facts of this case, however, do not show that the funds raised on the sale of the bonds were expressly reserved to buy the articles specified in Schedule B of the schedule of assets. The adjudications cited in the opinion of the court in the Medina Quarry Company Case included the case of Zartman v. First National Bank, 189 N. Y. 267, 82 N. E. 127, 12 L. R. A. (N. S.) 1083, and from this and other cases the court deduced that a distinction existed between machinery, tools, and appliances which were acquired subsequent to the execution of the mortgage, and were bought with funds realized on the sale of the bonds, and supplies, products, and materials to be sold, and not in existence at the time of making the mortgage.

In determining the issue in Re Medina Quarry Co., the case of In re Dry Dock Co., 16 Am. Bankr. Rep. 325, 144 Fed. 649, 75 C. C. A. 451, decided by the Circuit Court of Appeals for this circuit, was overlooked, and my attention was not directed thereto by counsel. There the property in the possession of the trustee in bankruptcy consisted of a house boat constructed, for the greater part, from materials bought after the making of the mortgage, which in terms included after-acquired property. Such a mortgage, the court said, "has been held valid and effective by the federal courts (Central Trust Company v. Kneeland, 138 U. S. 419 [11 Sup. Ct. 357, 34 L. Ed. 1014]), but the case at bar must be disposed of in accordance with the decisions of the state courts." And in decisions by the Court of Appeals of this state it has been plainly held that generally, as against creditors who are unsecured, a mortgage does not operate as a lien upon after-acquired property or materials. In the recent case of MacDonnell v. Buffalo L. T. & S. D. Co., 193 N. Y. 92, 85 N. E. 801, Judge Werner, writing for the Court of Appeals, says:

"A mortgage may be so drawn as to embrace within its lien the property that may be acquired by the mortgagor subsequent to the execution of the mortgage. * * * But such a mortgage, as to chattels not in esse when it is executed, is merely an executory contract to give a lien, which a court of equity may enforce, as between the parties, when the chattels come into existence, or which the mortgagee may, in some cases, make effective by taking actual possession of the after-acquired property. * * * While such a contract is enforceable, as suggested, between the parties thereto, it is hedged about by the limitation that it shall not affect the rights of other creditors of the mortgagor."

The attorneys for the bondholders contend that the Zartman and MacDonnell Cases are based upon different principles than the case in suit, as in the Zartman Case the property consisted of "shifting stock and materials," and in the MacDonnell Case of after-acquired choses in action, while in the case at bar the property consisted of machinery, tools, and appliances appurtenant to the plant or real estate. In the case of Platt v. N. Y. C. & Beach R. R. Co., 9 App. Div. 87, 41 N. Y. Supp. 42, the after-acquired property was that of a railway com-

pany; and the court held that under the peculiar conditions regulating rights of bondholders as to railroads a mortgagee secured a lien upon such after-acquired property superior to subsequent mortgages or judgments. In United States Mortgage & Trust Co. v. Eastern Iron Co., 120 App. Div. 679, 105 N. Y. Supp. 291, the mortgage covered and described lands afterwards to be acquired, in which the Iron Company already had mining rights; and the court held that the lien obtained under such a mortgage was superior to the title acquired by purchase of the same lands on the foreclosure of a mechanic's lien filed subsequent to the time that the mortgagor obtained the fee. It is emphasized in that case that at the time of the execution of the mortgage the Iron Company owned everything except the naked fee in the land, and that the bonds were issued for the express purpose of buying the real property and conducting mining operations. The gist of the decision differentiating it from other adjudications, such as the Zartman Case, was that the property had "actual or potential" existence at the time the mortgage was given, and that therefore it was not void as to intervening creditors. R. D. Co. v. Rasey, 142 N. Y. 570, 37 N. E. 632, 40 Am. St. Rep. 635.

It is true that in the Zartman Case the court, in its opinion, speaks of shifting stock, meaning thereby the musical instruments and the materials therefor furnished by the creditors, while in the case at bar the after-acquired property consisted of machinery and office fittings purchased in part with money raised on the sale of the bonds, yet the decisions herein cited do not expressly make a distinction between shifting stock and other after-acquired property; the only distinction made being in cases where the bonds were issued to buy property actually in existence, and, in the case of a railroad company, where the money obtained by the mortgage covered after-acquired property, and the creditors had notice of the extent of the lien.

The question submitted for review must be decided in favor of the trustee.